Good morning, Your Honors. May it please the Court, I'm Josh Koppel for the Department of Labor. I would like to reserve six minutes for rebuttal. Okay, we'll help you as much as we can, but keep an eye on it yourself. I will. Plaintiffs seek disclosure under the Freedom of Information Act of the EEO-1 reports submitted over several years by all federal contractors. Those reports identify a contractor's total employee headcount, describe the allocation of personnel across job category, and describe the demographic makeup of the company's workforce. Nearly 4,800 federal contractors objected to the disclosure of their data. The Department of Labor withheld the EEO-1 reports of objecting contractors under FOIA Exemption 4, which covers commercial information obtained from a person and privileged or confidential. And the district court erred in holding that the department is required to disclose the EEO-1 data because the information is supposedly not commercial. The terms of FOIA's exemptions must be construed according to their ordinary meaning. This court and others have held that information is commercial if it relates to commerce, trade, or profit. The information here plainly fits within that definition of commercial. Well, I guess, Mr. Koppel, that's a puzzle for all of us, I think, in working out, because even if the definition is clear, we have to assess the information and maybe let us know if we're getting this differently. But I think on something like an individual basis, and all we've got here is summary judgment on six bellwethers. So I'm wondering if you could map out for me what happens if, you know, so if we find that, and of course we're only at one stage of the analysis and then there's another step and then maybe another couple steps after that. So what do you need or what kind of guidance, if you prevail on any of this, for reversal? Is it that one of the six bellwethers has commercial information? Do you need all six? What guidance does that provide going forward? What's your understanding of how the district court intends to use these bellwethers? I think the district court — I think the district court — and this isn't exactly clear from the decision, but I think the district court intended to hold that based on the declarations provided by these five bellwether contractors, there was originally supposed to be six, but in fact there were only five, that E01 reports as a general matter aren't commercial. I think it would be enough for this court to reverse just to say that this does indeed have to be a company-by-company determination. But in fact we actually believe that the E01 data is commercial data as applied to any federal contractor, and that's because of just the nature of the information in these reports. That might not be true about all information, but it is true about E01 data. That's because E01 data contains the total employee headcount of a company. It describes the resources, the human capital that a company has at its disposal to engage in trade or commerce for profit, and the employee headcount reflects the company's ability to produce the goods or services it sells, much like a company's production machinery or other capital assets. Similarly — And that's as a categorical matter. I mean, you could see in some instances if it's predominantly a service-oriented, and of course we've got — it's got to be 100 employees, and there are 10 categories, but you could see that in a service category where one of the services that are provided align very tightly with one of those subcategories, that that might look something like an inventory. But is that going to be true categorically? Does it turn at all on the mix of labor and capital of a particular business? It doesn't seem like we can make that categorical judgment, can we? To determine the production capacity, you might need more information than the headcount, but headcount does give you some commercial data about the company, and that's all that's required under FOIA Exemption 4. FOIA Exemption 4 doesn't require or doesn't only cover information that provides a certain quantum of information. If the information is commercial, it falls within that exemption, assuming the other prongs of confidentiality, et cetera. Well, but the problem comes in that we're trying to find out what commercial is, and we've defined commercial, and I guess I was interested in how you were going to respond to the questions already asked, because it seems to me that your best argument is that it becomes commercial if the company is a service-oriented company. I don't think that's necessarily true. So consider, so there's employee headcount. I guess I'm trying to figure out, if I look at the definition of commercial, I'm trying to figure out how it would relate to anything but that, because that's the only place where the workers would be doing, if you will, the profitability for the company. Well, consider not only total employee headcount, but the EEO-1 reports also break down the workforce according to job category. So they disclose how many salespeople the company employs to generate revenue, and that's going to be true whether this is a service business or whether they're selling goods. But just because you know how many salespeople there are or how many in management there are or how many servicepeople there are, and there are many categories, 10 categories, I'm not saying them all, I'm trying to figure out why, given the standard is that I ought to have the information produced in general, that's the standard, why that makes any difference, those counts. So I'm not sure that – well, I want to back up and look at the purpose of Exemption 4. So the Supreme Court said in Argus Leader that one of the interests promoted by Exemption 4 is providing private parties with sufficient assurances, this is a quote, about the treatment of their proprietary information so they will cooperate in federal programs and supply the government with information vital to the store. That's confidential. That's confidential. Argus Leader described confidential, and you still have a shot at confidential on remand, no matter what happens. But part of the – FOIA is a statute about exposing to the public information created by the government about the government. This is information created by private entities, by businesses, and submitted by those businesses to the company. FOIA isn't meant to be a tool for investigating private companies. Well, that's not what Congress said. Congress said it has to be commercial from a person. It's not – I think Congress knew exactly what it was doing in terms of opening to disclosure information that's been provided to the government by persons and privileged or confidential. So commercial must do some other work than merely private or proprietary. Well, and it is about information that is used in commerce or trade or profit, as this Court has defined the term commercial. So if it's information by a private citizen unrelated to anything having to do with business, that wouldn't fall within FOIA Exemption 4. But when you're talking about information about a company and about a company's operations, the way it has structured its business, the way it's structured its workforce, that is commercial information. Where the district court went wrong here – Where do we find a case that would say that simply because it's the structure of the business that it makes it commercial? Because if I look at the different cases, it doesn't seem to me that those would suggest that result. If I look at – even if I look at Watkins, I didn't really find that. Even if it deals with Getman, there's a list of employees. That's not commercial. Center for Investigative Reporting, again, that's a Northern District of California case, which would not seem to suggest it. If I look at Citizens for Responsible and Ethics in Washington v. Justice, that would not necessarily suggest what you're saying. I'm happy to go through those cases one by one. I do want to address Getman. In Getman, the D.C. Circuit held that a list of employees who are eligible to vote in a union election, the list of employees' names and addresses was not commercial information because the D.C. Circuit explained that the names and addresses is information about the employees themselves. It's about private individuals. It was not information about the company. Now, plaintiffs suggest that while you could derive from that list certain information about the company, such as headcount, but that's actually not true because, first of all, those lists did not necessarily include lists of every employee in the company. They didn't include the employee's job position, so you couldn't know which employee was employed in which job category. But even if you could derive some of that information, those arguments weren't presented or considered by the court in Getman. So this case is very different because this case— in fact, quite the opposite in Citizens versus the United States Department of Justice. It seems to me they said very straight, workforce data only tenuously or indirectly concerns commercial. They said the exchange of goods or services or the making of a profit, which is commercial. This is Center for Investigative Reporting. Is that what Your Honor is referring to? No, no, I'm talking Citizens for Responsible and Ethics in Washington versus U.S. Department of Justice. It's the D.C. court. Yeah, the D.C. Circuit there was not addressing workforce information. The D.C. Circuit was addressing the argument that you determine whether information is commercial based on whether its disclosure would harm the interest of the person who provided that information, would harm commercial interest. And the D.C. Circuit rejected that theory. And that's exactly where the district court went wrong here. The district court was asking whether disclosure of this information would provide commercial gain to the company's competitors. That's not the right answer. Even under the test, so granted perhaps that we're trying to apply the plain meaning standard that we've recited more recently, but I guess I'm trying to see categorically at least. I see your point that the difference here is the breakdown. So it's not just workforce. I would think that union numbers tell you quite a bit about a company's mix of capital and labor, particularly where you can discern CBAs from other areas. But here, let's say the government contracts with Amazon or Google. I'm looking at these categories, and I just don't see how any way some mix here would tell you anything about the operations of those companies. And if that's the case, I think the most that we can do here is send it back for an individualized determination of commerciality. So I think that the EEO-1 reports would tell you something, would tell you how many executives they have, how many top-level managers, how many sales employees they have. Now, that information might be general enough that it wouldn't provide a lot of value to a competitor, but that isn't beside the point. That's not the test under FOIA Exemption 4. The Supreme Court in Argus, Leader, was addressing the term confidentiality. The courts of appeals there had universally held the information is confidential only if its disclosure would provide gain to competitors. Right. You know, I understand that point. I note that you're not defending the commerciality of any of the diversity data. Is it, and as I read our cases, there's a duty to segregate. The government has a duty to provide as much data as it can, and it can redact others. And as I understand the request here, it's for spreadsheets or summary data. If the diversity, let's assume you win on some or all of the commerciality and then run the table on the other elements. Do you have any argument for how the diversity data, the demographic mix of a company's employee could be categorically commercial? I want to make two points here. In terms of categorically, I suppose it depends on the way that the company uses the diversity data. The bellwether contractors here explain that they do use the diversity data in their human resources programs. They also post it publicly, some of them. Well, some of them post it publicly in different forms. They might post percentages. And that gets to the second point, which is that there's no way to redact this data without disclosing total employee headcount and allocation across job category. So, you know, these are a team. So your understanding is that FOIA does not impose any duty on the government if it is possible to segregate the demographic data from the headcount. Again, they're asking. I'm wondering, in your job day to day, so that's not something the government ever does. They either get the sheets, and given the nature of the sheets that's got numbers, you can only disclose the numbers in the boxes on the table or nothing at all. The government has to segregate data where it can do that so that it doesn't disclose information that it doesn't have to disclose or that's prohibited from disclosure. But in this case, there's no way to do that because the EEO-1 report is essentially a grid of numbers. If you just redacted the bottom line that tells you total employee headcount and headcount in each job category, you could simply add up the numbers. That was my assumption, but they've asked for spreadsheets. Is that ever anything that... Even if you just move the numbers over, it would be the same issue. Not if you look at the bottom line in the spreadsheet. Well, the bottom line of each company would simply be the sum of each gender, each race, etc. There's no obligation on the government to create new reports, for example, to put these numbers into percentages. Maybe that, if there were percentages and the court held the diversity data is not commercial, then maybe the government could redact everything else and provide the percentages. But these forms don't have the percentages, and there's no obligation on the government under FOIA to create or manipulate the data so that it can disclose. Mr. Koppel, I'm thinking about my colleague in the Northern District of California. If we were to reverse and remand, would the trial court be required to review every one of these reports and perhaps do some redactions? So, again, I don't think there is a way to redact these because if you're going to provide numbers, you know, the individual numbers of gender or race, you could simply add those up to get total employee headcount. I don't think there's a way to redact. I don't think there's any need to go individually to determine if these are commercial. All EEO-1 reports contain commercial information. There may be a need to go individually or in groups to determine whether those reports have been kept confidential, but the district court didn't reach that yet, and the district court can devise a mechanism on remand to determine how to do that in an efficient way. And what would that look like? Well, I'd leave that to the district court on remand and to the lawyers on remand to figure out a way to do that, whether it's the plaintiff coming forward and challenging whether particular contractors have kept their data confidential or whether there's some way to do it in tranches. I don't want to get ahead of the district court there. So you're really suggesting then that if I were to suggest that some of this material is commercial, there's no way to redact, so therefore we send this back to the district court to determine then confidentiality and the trade secret issue? So I think this court should reverse as well on the trade secret issue. But at this minute, if we're just doing on confidentiality and we're going to say a different response than the district court as to commercial, why wouldn't we allow him to think about that before we would wade in? Because the district court already waded in on the trade secret issue. He waded in, but he waded in on the idea that it wasn't commercial at all. And then he said because it isn't commercial, the Trade Secrets Act doesn't apply. That's what he said in effect. If that's the way this court interprets the district court's decision and, you know, as long as it — You want me to read it to you? That seemed pretty flippant at the end. I just want to make sure that when this court reverses, it's clear to the district court that it is also reversing the district court's reasoning concerning the Trade Secrets Act. As long as that's clear, I'm fine with it going back to the district court to reconsider the Trade Secrets Act issue in the first instance. I just don't want it to get back to the district court and have him say, well, I don't have to determine confidentiality because I already determined Trade Secrets Act, and the Ninth Circuit didn't reverse on that basis. Oh, I see. Okay. I understand your argument. Thank you for taking the additional time. I guess just — and we'll give you time again because you're on the front lines of these things and have a better understanding of your clients. I just want to understand kind of what it looks like if it goes back. You would understand that the parties would work out some way, if there's any question, if the Bellwethers, in other words, can't answer the question definitively for the entire class, that it is the parties going back to the district court and for thousands of businesses, contractors, over tens of thousands of forms going bit by bit. I just want to get some level of comfort that that's a thing that happens. Yes, it is. And I just want to be clear. If you mean with regard to confidentiality, yes, I think that is exactly what needs to happen. Okay. Not with respect — okay. That is helpful. So what about with respect to commerciality? I think that this Court should hold as a general matter that employee headcount, the allocation of personnel across job category, when it reflects a — you know, when it pertains to a commercial business, that that is commercial information. That's what you want us to do, but you could also do that with respect to commerciality. I mean, there's nothing in the statute, you're saying, or are we missing anything in the law that would require — prohibit a document-by-document inquiry as to commerciality when we're already doing one as to confidentiality? No, I don't think there's anything in the law that prohibits that. And there might be types of information that whether it's commercial might depend on the nature of the business. If this Court decides that that is true about EEO-1 reports, then it should reverse and remand for the district court to consider the individual forms or the individual companies. All right. We'll spot you at 5 on Roboto. Thank you. Thank you. Ms. Baranetsky. Good morning, Your Honors. May it please the Court, Victoria Baranetsky on behalf of Appalese. This Court should affirm the district court's decision and hold two things. First, EEO-1s are not commercial under Exemption 4 of FOIA under any circuit's case law because they contain employee data and they contain no intimate commercial information. To hold otherwise would undo 50 years of Excelsior case law. Second, this Court should find that there was no foreseeable harm here because the government has not met it with the requisite specificity and it cannot do so because it objectively cannot meet this test where contractors have disclosed this information for years as well as the government. First, as to the matter of commerciality, EEO-1 reports are not commercial because they do not reveal commercial information. While FOIA does not present a definition, unfortunately, of commercial, this circuit has found in Watkins and in Carlson that records are commercial if they reveal intimate information. On the other hand, this circuit and every other has also said that information containing employee information is not commercial, is not commercial, on the other hand. So applying this test, many courts have found records pertaining to products, business decisions, or the bottom line, those records are commercial. But records here containing employee data, those are not commercial records. But I guess in order for that to hold, Ms. Baranetsky, you really have to run the table for all 4,000 or so companies. And I think as Judge Christensen has pointed out, if you're dealing with a service company, it's not clear. But in other words, we have also said or other courts have said that supply chain fluctuations, inventory, you know, to take the example of the security guard contractor here or think about, you know, DoorDash or something, where their business is entirely people and we've got a horizon over several years here now of watching a business staff up and staff down and reply. That is, why is that not their inventory or at least could sometimes be their inventory because you need a categorical result to prevail. That's correct, Your Honor. And we think even in a service-oriented industry, these records are not revealing commercial information for multiple reasons. So, first of all, the titles that issue here are extremely vague. There are 10 categories. They apply to every industry. So, there are things as vague as professionals or technicians or managers. That's not enough to reveal something intimate. And in fact, the district court of in the District of Columbia already previously said this in a case called Public Citizen. It said where records disclose an employee's name, title, and even the responsibility. That was not commercial information. Moreover, this is also not intertwined with commercial information. So, costs for each of those employees, time for each of those employees, locations. The government seems to ally these records with Type 3 or Type 4 EEO-1 reports, which are different kinds of records. Those break down a business by location. Here, we're talking about businesses that are huge, massive. So, for example, North Shore Health Company, one of the companies listed, has nine hospitals, 300 clinics. Allied Universal, which you just mentioned, a service-oriented industry, has 770,000 employees in 100 locations. So, breaking down the total number is not going to reveal anything intimate. In fact, total employee headcount is something closer to revealing perhaps the number of printers in a company. I was wondering, I guess I didn't see this in the cases, but whether you have any experience with, it would be something I think people using FOIA may want to know in some cases, say just the absolute amount of government contracts. So, that may be something similar if we're talking about the volume set aside, the categories, but the volume of employees. Are you aware of any authority that says that the fact that X contractor has a $10 million versus a $10 billion contract for a given year is or isn't commercial? I'm not aware of that, Your Honor, and likely it's because of the case law that's existed for a while. So, even Getman was a case where they talked about the total number of union employees granted, but still the number of employees at issue. And that would probably be why many companies even post this information. So, even with the individual contractors discussed here, Brandenburg, for example, posts on its website 750 employees. I just listed DHL, or DHL, 600,000. Well, we want to be careful not to conflate the inquiry. Congress has made room for us to get to the confidential nature of them separately. And so, commercial, this is the converse of what I was talking with your friend about. Commercial must also do its own work. Yes, commercial certainly must do its own work. And we're just saying that sometimes courts in their dicta do discuss, or not dicta, but in the conversation of commerciality do discuss whether records have been disclosed or not as indicia. And more importantly, however, as I stated, many courts have underscored, such as the New York Times case in the Southern District of New York, that records have to be intertwined with something more commercial. So, there the court found information is commercial only when intertwined with other information, such as sales statistics, profits, lawsuits, inventories, references to finance functions. That's also in the legislative history. But moreover, should the court adopt the government's definition related to, that's too broad of a test here, and we would like to warn against that, because it is not clear what wouldn't fall under that test. The government states in its reply brief that something supposedly wouldn't fall under there, but they don't name a single example. And the District Court of Columbia has already said that not every bit of information submitted by a company would be commercial. So, therefore, that rule cannot be adopted in this case. And this court narrowed that, both in Watkins and Carlson, finding it was intimate information, and other courts have done that. Every single D.C. Circuit case often asks for something more. So, crew, it was commercial reality and a commercial function. A hundred reporters, it had to be something that was intimately related, even the con case that the government relies on. There, it was common sense, because those records dealt with revenue, net worth, income. On the converse, cases involving products or business decisions or bottom lines, such as the Chicago Tribune case, involved a direct relationship with operations of a commercial venture. Ms. Baranski, I wanted to come back to you with a question I asked your friend. I believe your request was for spreadsheets or some sort of summary data. What's your understanding, in a world in which, at least in some cases, there may be commercial information on the workforce side, but that there's an insufficient claim of commerciality for the demographic breakdown, the diversity data? Because, as I understand, your bottom line is, you haven't framed this request as, we want to know how many sales workers government contractors have. If you're interested in the overall diversity of a contractor's workforce, for purposes of determining whether, I don't think the EO is enforced anymore, but for determining whether it's compliant with that. So, can we break that down? Is that something that you were seeking? Or, do you agree with the government that we're stuck with these forms, and the best they can do is black out particular boxes? Potentially, there is some way, Your Honor, but we do not think that that is necessary in this case. I mean, potentially, is there any precedent for it, is the kind of thing we're interested in? There's no precedent, and two district courts have already found that these records can be disclosed in full, likely because they have been disclosed by the government before. So, we are asking for a wholesale disclosure of these records. We also believe that redactions would be burdensome. There are 16,755 reports from 4,796 contractors. So, it would be a difficult process. And again, these are not type 3 or type 4 reports. These are more generalized reports. I would also note that these records fulfill a government function. I think that's really important to underscore here. The government states in its reply brief that the function of the records is irrelevant. These records have been created, collected, and kept by DOL since 1966 for their own purpose. And that's why these records are so vague, because they're meant to fulfill a government purpose, not a commercial one. And in many circuits, including the First Circuit in the New Hampshire Right to Life case, in the D.C. Circuit, in the Crew case, both say the government function is also a critical part of this test. So, where records are not intertwined with commercial information and fulfill a government function, we believe that they should be found to be not commercial. It seems to me that the government's best argument is that these documents tend to show a commercial impact because it shows a company's ability to produce the goods or ability to make the profit. How do you respond to that? That's putative. I feel like the – I think that here it is unclear what that would actually disclose. These are, again, records. Yes, they reveal the total employee headcount. But that says nothing about the productivity. It says nothing about the products. It says nothing about the ability for these workers to fulfill their roles, how many of these workers are staffed in different locations. It says nothing about their hours or their wages. So, based on that, this Court is capable of finding these records and should find that these records are not commercial, because it's not linked with something more specific. And as stated previously, the legislative history says as much. It says examples were sales statistics, profits and losses, inventories, or information that relates to other aspects of the products of the company. So, for all these reasons, this Court should not find these records are commercial, even in a services industry, even with fluctuations. And so if I find these records are not commercial, is that the end of the inquiry in this case? It could be the end of the inquiry. If this Court chooses, it could also consider the rest of the tests, but it need not do so in this case, given that these records are also not confidential. But the honest truth is the district court really didn't talk about confidential in any great way. It seems to me that the district court only needs to talk about confidentiality if, in fact, we're going to suggest they're somehow commercial. That's correct, Your Honor. But my question really dealt with the Trade Secrets Act. Have I got to address that if I were to find that these were not commercial? This Court need not address that issue. Even as the district court has, if you will, had its say about the Trade Secrets Act and how it relates to exemption 4? This Court could vacate that part of the decision. But as we would say, as we said in our brief, the government raises that issue. It's a long and convoluted argument, and we believe it's actually a red herring. It's wrong for multiple reasons. Most plainly, we think that this Court need not look at that provision because, as it has said previously, Exemption 4 essentially voids it. So as the government even stated in its brief, the Ninth Circuit has long held that the scope of Section 1905 is coextensive with FOIA Exemption 4. So that case ends the analysis. And if the information is not protected by Exemption 4, the TSA is not protecting it. DOL itself states this in its brief. It says, quote, because the district court mistakenly concluded that EEO-1 reports do not fall within FOIA Exemption 4, it had no reason to address the application of the TSA. So, therefore, this Court could either not address it or it could vacate that part of the decision. Which case are you referencing of ours where we've addressed that they're coextensive? That's Pacific Architects and Engineers versus U.S. Department of State. It's a Ninth Circuit case from 1990. Does the Argus Leader case change any of that? Because to the extent I know some of our cases have discussed it, framed it in terms of competitive harm. It's hypothetical that it does, but this Court need not find that today. So previously in the Synopsis case, this Court said we need not decide here whether Exemption 4 is indeed now broader in scope than the Trade Secrets Act. This case is about commerciality, and it could be just limited to that decision. So you're suggesting that the Artisan case or whatever, we would not have to address that in this particular situation? I read that case, and I felt like, goodness, maybe I'd have to address that anyway for Trade Secrets. No, Your Honor. You were correct to say that this Court could just limit it to the commerciality prong. So if they're not commercial, this Court needn't look further. I'm happy to address that quickly if you are interested. Essentially, in the Argus Leader case, the Court said records have to be both customarily and actually secret. Here they are not customarily secret, which is fatal to D.O.L.'s argument. Numerous companies published these. Three-fourths of the contractors in this case did. And that's a categorical rather than a company-by-company inquiry? That's correct. Well, that actually is – there's a split in circuits as to whether that's the case, but there are cases that have stated that if it's customarily not secret, that satisfies the test. So, for example, American Small Business League, the Northern District of California case, C.I.R. versus Department of Labor, Northern District of California case, both stated that you could possibly point to other competitors who released the information as to the question of confidentiality. I would also note that D.O.L. also admitted in its briefing below in the Moskowitz Declaration that companies are increasingly disclosing this type of data, and they're not actually secret because the objecting companies disclose EO-1s in their 10-K filings online, Google. EO-1s are shared with the government. They're not stamped confidential. There's no NDA. This is very different from Argus Leader. There, the Court said that the records were not disclosed in, quote, any way. That is not the case here. And further, while the express or implied assurance of privacy, it's not determined between circuits whether that's necessary as a part of the test, there's no express assurance of privacy. The government only states it will protect the records to the extent provided under the law. That's not a solid promise, and OFCCP cannot give a solid promise, and that's because courts have ruled that the Title VII prohibition on EEOC does not apply to OFCCP, so it can release those records. And there's no implied assurance based on its prior behavior. DEOL has released these to CIR, released them to CNN, to the Mercury News, and it released this in this case and others. As the District Court of Columbia said, quote, a history of releasing information at issue is a clear implication that there's no assurance of privacy. Ms. Baranski, if I could take you back to the bellwether issue. What do you view, of course, right now under the district court's holding, ran the table with respect to bellwethers, the effect of it, whether or not it was the purpose, is that that applies to all of the companies. If we, there might be a couple of different ways to look at this, but if we find, for example, that one bellwether is a pretty good example of a service company where there might be a question of their commerciality, or we might find, well, none of the bellwethers seem to be commercial, but, you know, kind of on a rational basis to review. We have some concerns that we don't know anything about the other 4,000, and we're also answering the question to them, so we'd still want to send it down for an individualized review. What's your view of the bellwethers with respect to any remand that we provide and our analysis of whether to decide a remand? Our analysis is that the bellwethers were not a necessary step, but the government, you know, seemed to indicate that it would be a difficult cost and burdensome cost for individual review, so the government or the court issued a bellwether analysis, which should have been representative of the whole. So, as you understand, I'm trying to figure out what the parties thought they were getting with the bellwether analysis. If we find that none of the bellwethers present sufficiently commercial information, is your understanding that the deal going in with the parties is that no one's commercial? And separately, if we find that one of them is commercial, the deal going in is that everyone's subject to individualized analysis? Is that how we should look at it? I think that would be an appropriate analysis. The concept of bellwethers is to essentially be representative of the whole. And if we find that, hypothetically, none of these bellwethers, but it just turns out these may not be the right bellwethers for the things that are concerning us about drawing this line. There might be another one. Could we remand for individualized even if we aren't able to point to one of the five bellwethers? Again, Your Honor, it should have been representative of the whole. DLO had opportunity for months to consider what were the best cases. They could have raised that in their brief as well. There was never any mention of that. No discussion that these are not representative, that this wouldn't be part of the whole. So these are their best shot at the very most. Of course, the bellwethers are for the whole test, but these are going to be the best bet on finding a finding of commerciality in your view. Your Honor, I would say one of the bellwethers did drop out. So even if the government says this is not their best bet, the government still could have made arguments explaining other examples, other hypotheticals in its brief, could have given other kinds of demonstrations without focusing on the bellwethers and still noted that in saying that, you know, there were other bellwethers at issue here that were not being represented, but it did not do so. And so for those reasons, this should be a comprehensive test. I would just like to mention the foreseeable harm argument, if we have a second. The government claims the court need not consider this, but the FOIA Improvement Act says that the foreseeable harm test is, quote, a necessary and independent requirement. The D.C. Circuit has adopted this most recently in the Leopold case just a year ago. How do we get to that if we're inclined, even if we reverse on commerciality, if the district court hasn't yet reached confidentiality? If this court does consider commerciality and confidentiality, I just wanted to note that there is still the foreseeable harm test, which is a necessary and independent requirement, and the government has not met it here because it has not met it with the specificity. Despite the or? Yes, despite the or, because the foreseeable harm test should first be considered. And so even with the discussion of the TSA, the TSA states in itself, the question is whether it's authorized under the law to be disclosed. So we first have to discuss Exemption 4, and then we discuss FOIA, and then we can see if there is going to be a TSA. The government is trying to end run the foreseeable harm test here, Your Honor. This is a test that Congress has said has to be attached to this analysis, and I'll just quickly note that it has not met that test because it has not listed a specific harm. Its only harms on page 11 are, quote, human resources management strategies are disclosed, quote, labor productivity, quote, forecasting. What strategies? What productivity? What forecasting? And your best case that beyond reading the word or is and is what? The Reporters Committee versus FBI in the D.C. Circuit and the Seif case in the Second Circuit. So Reporters Committee clearly states in our favor that there the government did not meet the foreseeable harm test because it didn't explain how the FBI found that the specific harm would happen. And in the Seif case, it found that it did find the foreseeable harm test was met because there the government clearly explained how the information could be used, how it would help be used by competitors, and how it would be informative. Okay. We've taken you a little bit over your time. I want to see whether any of my colleagues have any other questions. Okay. Thank you very much, Ms. Berenson. Mr. Koppel, five minutes. Thank you. I'm going to try to hit five points very quickly. First, you know, I read in the newspaper yesterday that Jeff Bezos' company, Blue Sky, let off 10 percent of its workforce. That's commercial information. If you look at EEO-1 reports one year after another, you see whether they've downsized, you see whether they've grown, and you see whether they've grown or downsized in particular job categories. If you had the same information about Apple, clearly a producer of goods, not services, I think you would say the same thing. Whether they have added to their workforce, whether they've downsized, that's commercial information. It might not always be confidential, but it's commercial. Second, plaintiff when she was — Well, it's commercial if you make a wide definition of commercial, I guess. I'm not sure it's commercial at all. But I'm trying to put the definition we've put on commercial on that information, even as you say it, and I'm not sure it fits my definitions from the cases I have to read. This court has said in McClellan that information is commercial if it relates to trade, commerce, or profit. And if a company has cut its workforce, if it's grown its workforce, that relates to its trade. That relates to its efforts to make itself more efficient. Well, so I guess, but we're now talking about looking at kind of a conceptual question with respect to FOIA. Sure, if you get information from this request and information from this request and you put them together, is that something we can do to determine whether it's commercial? At FOIA, the statute seems to read with respect to parsing the information. Well, to be clear, this is one consolidated request for all the reports of all federal contractors over several years. So, yes, absolutely. You can say that once you disclose all of this data, you can look at a company's trajectory over years. You can see how it's responded to industry trends or anticipated industry trends by growing, by contracting, and in certain job areas. So if they reduced it to one year, you'd be okay with respect to that requirement? No, this just is another area in which the information is commercial. You have four more, so I want to make sure you get them all. Second, the counsel for plaintiffs repeatedly said terms like questions whether this is intimate commercial information, that adds a limitation that's not in the statute. The statute says commercial information. Argus Leader warned against adding limitations to the exemptions that are not in the statute. Third, I do want to emphasize that whether information is commercial is an individual inquiry, even if this Court thinks that none of the bellwether contractors have met that — have met that standard, if there's at least a hypothetical possibility that other contractors could, it should remand. There was never an agreement that these five — that the decision on these five contractors would govern. It was more of a process issue, right? But these are your bellwethers. Why isn't that part of the terms of the deal that you made with the Court in terms of advancing these bellwethers? This was a process suggested by the Court to — and, I mean, the bellwether process, you know, the purpose is to see how the kind of the argument plays out, but that doesn't mean that it's going to govern necessarily for all of the other contractors. Who suggested the bellwethers? I believe the Court did. I think the Court did, too. But I'm suggesting that you, after the Court suggested the bellwethers, got to pick the ones you wanted, got to decide who you would have as the bellwethers in order to make a general interpretation of what to do about commercial. That's why it was done that way. And the Court wasn't trying to eliminate the bottom lines or the corners. The Court was trying to say, hey, give me your best cases with the bellwethers you want to put up there, give it to me, and I'll make a determination. I think that's what the Court did. And I think that we did make a showing that all of — Well, you came forth with the ones that you thought were important, and it didn't work. Well, I think that that's because the district court applied the wrong standard. The district court asked whether disclosure — Well, I understand, but okay. But you're saying we're not limited to the bellwethers, even though we're reviewing a district court decision that is of your bellwethers? I think this Court could remand with instructions to consider the remaining contractors. My fourth point, with regard to confidentiality, there's no need for this Court to get there, but I do want to point out that at page 434 of Argus Leader, the Court says that confidential — information is confidential when it is customarily kept private or at least closely held by the person imparting it. This is not a categorical determination. But just a minute. If the district court didn't talk about confidentiality because they didn't think anything was commercial, and now we say go back and determine whether this is really commercial or not, or we say it is commercial, it seems to me they have to apply the rest of the statute. I agree. The confidentiality — You can't say confidentiality is irrelevant. It's dead front in front of us if we're going to do it commercial. Absolutely. I'm not saying that confidentiality is irrelevant to the determination of whether FOIA Exemption 4 applies. I'm saying that I am disagreeing with plaintiffs that this Court can determine whether EEO-1 reports are confidential as a general matter, because Argus Leader says that whether information is commercial — is confidential depends on whether it's kept secret by the owner. Now you're — I misunderstood your argument. Okay. I see what you're arguing. I see I'm out of time. Bill Frieda, you have one more. My last point was simply that this Court doesn't need to get into the foreseeable harm inquiry. It's a fact-based inquiry. If this Court thinks that it is relevant, it should remand to the district court. But as Your Honor pointed out, the FOIA Improvement Act has a disjunctive, right? Disjunctive evidence, or because the Trade Secret Act applies, because this is — EEO-1 reports are statistical data, disclosure is prohibited regardless of whether there is foreseeable harm. We ask that the Court reverse the decision below. Thank you, Mr. Koppel, and thanks to both of you for your arguments today. The case is submitted, and this sitting of the Court is adjourned for the week. Thank you all. All rise.
judges: SMITH, JOHNSTONE, Christensen